We'll proceed to hear argument now in the first case on calendar for argument and that's 17-71616 Nemesio Alejandro Rodriguez-Patlan v. Merrick Garland and we'll hear first from Mr. Chan. You may proceed. Thank you. Good morning, your honors. May it please the court, my name is Vincent Chan and I Council Juarez, can you hear me? Please turn on your video. There we go. May I continue? Yes, you may proceed now. So as I'll say, my name is Vincent Chan. I represent the petitioner Nemesio Rodriguez-Patlan in this action. And I'd request to reserve three minutes of my time for rebuttal. I simply wanted to go over the two issues that popped out to me as I was reviewing the briefs. Timing of the asylum application and the Board of Immigration Appeals rejection of the misconduct here as persecution. Now turning first to the timing, I think no one disputes that the one year time period has expired. The question is whether or not it should be told due to exceptional circumstances. Now if the court reviews the brief, you'll see that first the law provides expressly legal disability in the case of a minor. And what it does not do, it does not as the statute of limitations, for example, in California would do, require that a minor file one year from the time of achieving this age of majority. What the law requires is reasonable diligence. And in this case, even though the asylum application was filed years later, the reasonable diligence is very simple. The persecution that Mr. Rodriguez suffered caused him to stop being or stop practicing, for all practical purposes, being a Jehovah's Witness for many years from his minority until his life came to such a point that he went back to find God in his religion. And as the brief points out, it wasn't until therefore he went into proceedings that he actually learned that there was such a requirement from his attorney. So if we talk about reasonable diligence, it's not as though the moment a person hits 18, that person immediately is aware of what's going on. As a minor, the law permits and I think society recognizes that kids don't know what's going on. And Mr. Rodriguez, when he turned 18 and became an adult, he was no longer practicing Jehovah's Witness, so there was no reason for him to be filing an asylum application at that time. So in this case, given his discovery of the faith later on and his filing within the period of him rediscovering his faith and discovering this at the age of majority, that is reasonable diligence that should... Was he diagnosed with some kind of a psychological condition? Well, he also had psychological conditions that would affect his ability to recognize the situation. But I think primarily... I mean, obviously, that likewise would add to the reasonability of this delay. But I want to primarily focus on the fact that the reason why there was such a delay was that during that period, he went from minority back into the faith. And from that time period, the asylum application would have, in fact, been timely. Would your argument change if he had resumed his religious practice earlier in time? Because there is a component of this that is that he didn't understand the timing issue as well. And our case law says, you know, ignorance of the law is not an excuse for reasonable diligence. So how do you square those two things? Well, certainly if, let's say, halfway in the period he had resumed becoming a Jehovah's Witness, then the argument... I'm not saying the result would change, but certainly the analysis would change because of his participation in it. But my point is that a person in ignorance of the law, it's an ignorance of a fact is the reality of it is that he was not a practicing Jehovah's Witness for a period of time. There was no reason to think that a person who's not doing something would exercise diligence to do that. You know, just as a really very, very poor example, I have to pay $400, $500 every year to renew my bar license. But if I were not a lawyer, no one would expect me to do that. And the point is, is that when he was young, he was a Jehovah's Witness, but he was a minor. So when he came here, the tolling would have taken place because of his legal disability of being a minor. The question becomes, at what point can the law and a reasonable person expect that Mr. Rodriguez would have come around and say, hey, this may be a problem. And I'm saying in this case, we don't even have an issue of him discovering the faith earlier. We have him discovering the faith at a point that more or less coincides with the time that the proceedings would have been undertaken. And so his asylum application would have been timely based on that type of reasonable diligence. Can I ask you about the persecution issue? Are you familiar with the recent line of cases in this court that have pointed out the internal contradiction in our case law over the standard of review for when a set of facts rises to the level of persecution? We have one line of authority that says it's de novo, and another that says it's substantial evidence. And we've dodged that so far. Is this an appropriate case to take that issue on? I don't think it is, because the facts of the case aren't really disputed. It's the conclusions that are drawn from it. So in this case, I think it seems to be credibility is not an issue that Mr. Rodriguez suggests the standard of review would be de novo. If the facts are not disputed, and it's just a question of whether it rises to the legal standard of persecution, that would suggest de novo. Well, that would be, I agree that that would be the appropriate standard. I'm sorry, perhaps I answered the wrong question. I was saying that in this particular case, that because the facts are going to be what they are. Well, you had said in your brief that you thought it was a substantial evidence standard based on a line of cases that said that. But our more recent case law has pointed out that we've got sort of an internal contradiction in our case law. Well, I mean, I'm certainly in this case, as I think that it doesn't matter because the facts come out the way they are. I think the better standard would be the de novo standard, given the important, I mean, if we look at, noted in the brief, the history of this country, that the Pilgrims came here from Pilgrim Rock. So in essence, our civilization here began with people trying to flee. Why don't you say why the, explain why you think that the level of the types and level of harm reaches the level of persecution? Okay, so in this case, we have Mr. Rodriguez's family being threatened with and actually suffering beatings with sticks, rocks, dog bites, and then when he goes to school, he's basically isolated and humiliated in front of his peers, children. And we know, like in this day and age, it's pretty much a stereotype of the stoning of people trying to practice religion in the Middle East is almost like the stereotype of religious persecution here. And we know also from our own society that when children, young children are humiliated like that and isolated, many of them end up with psychological problems, as we see here, and many of them end up committing suicide. So I don't think it's very, it's not a large leap to say that this is precisely the type of conduct that falls into persecution. And what I want to emphasize in my minute was that the, I'll take a little bit of my bullet time, was that the BIA seemed to say that, well, it was okay because the parents suffered through it and they're okay. But the law doesn't require, that's the whole purpose of asylum law, is so that people don't have to engage in it. Certainly there are saints and martyrs among us, but there are few and far between. And what our law provides for is people not to be subject to this type of thing. You don't need to become a saint or become a martyr or be beaten with sticks and stones and endure that in order to practice religion. Perhaps God may require it, but not our law and not in this society. So that's why, under any standard of review, this persecution existed and it gives rise to past persecution and the presumption of future. So I know I'm coming down to two minutes, so unless anyone of the members has any questions, I'll just reserve the remainder of my time for rebuttal. All right. Thank you. Thank you, counsel. We're here now from Ms. Juarez. You may proceed. Ms. Juarez, you may proceed. Thank you. Good morning, Your Honors. Anna Juarez for the Respondent Attorney General. To first address petitioner's timeliness arguments, today he raises a brand-new argument, arguing that his decision not to practice his religion for 17 years now affects his decision not to apply for asylum. He has never raised that before. Counsel did for the first time today. As Your Honors noted, he just argued before he was young and that he didn't know the law. According to the record, he had just turned 18 when he applied for asylum, and even if he was 17, close to 18, he then didn't apply for asylum until he was 34 years old. As the agency noted, even assuming, you know, his age was young and he didn't know, he really didn't show any exceptional circumstance waiting that many years to apply for asylum. And notably, he didn't actually start practicing again until a year after he filed his asylum application. He didn't practice and then filed the asylum application. The record reflects that after he filed it based on his religion, he then started attending, attending Kingdom Hall again. So we would argue that asylum is untimely, and he really hasn't raised any arguments that the court should visit that. Regarding withholding of removal, to answer Your Honors' questions, we would argue that, you know, this case was briefed in 2017. Courts were following the substantial evidence standard. We would argue that, you know, we should continue to apply that in this case. And it's not a case that... You're familiar with the line of cases I was referring to. It started with the Fon case, and then we've had at least three cases where we've dodged this issue while continuing to note the problem. I am aware. I think we can continue to dodge it here. I think under both, it's just, you know, there's discrimination and harassment. The record doesn't compel, you know, using the substantial evidence record. The problem is the beatings that are mentioned in the written application where he talks about getting beaten to the point of having black eyes and having that happen on multiple occasions. Now, I know he didn't seem to mention that in his oral testimony, but the agency never made a finding that that didn't happen or was not credible. And that factor, maybe under substantial evidence, it's not enough. But under de novo, you're starting to beat people and give them black eyes. That starts to look like it might rise to the level of persecution. Two different responses to that. I appreciate that question. As you noted, and I'll address it first, under the record doesn't compel reversal, because I agree. The agency just kind of gave him the benefit of the doubt and considered it as part of his religion claim. But he notably didn't testify and said that when asked about physical harm, he said, oh, I had a hard time seeing my friends and I couldn't find a girlfriend. And that's the only physical harm. In his declaration, he stated he was getting beat up by gangs. He stated he got a black eye three to four times. He also stated he was getting beat up or threatened twice a week. He also stated his brother was getting beaten up. His brother's declaration doesn't mention beatings to either him. No, but we can't do anything with these doubts about credibility because the agency didn't. And we can't rely on grounds the agency didn't. Right. So I think we kind of have to take these facts as they are. And the agency did, too. And even under case law and comparing it to other case law, there is case law that shows a few beatings that don't result in much physical harm don't rise to the level of persecution. Ms. Juarez, what about the fact that this is happening to a minor? How does that weigh – you were saying earlier that it wouldn't make a difference whether it's de novo or substantial evidence review. So let's take de novo, for example, just because it does present a closer question. The fact that this is happening to a minor over multiple times, starting from age seven with the harassment at school to age 16 and 17. If you look at it cumulatively, the beatings, black eyes, other harassment for practicing his faith, why in your view does that not cross the bar into past persecution? And I would note the agency did look at age and the cumulative effect of everything. I think even, you know, some examples of other cases that have addressed harassment and discrimination at a young age. There's a 2022 case, Castillo-Sagastumi. Young age was a critical factor. There were at least two physical altercations with gang members. That wasn't physical persecution. It didn't rise to the level of persecution. In Mansour v. Ashcroft, the petitioner said that he was persecuted mentally every day as a child. He was physically attacked by his teachers. His brother had problems. His wife's cousin was killed. That still didn't rise to the level of persecution. And then the cases where it does, it's, you know, like Rusak v. Holder, where an 11-year-old, his mom was arrested, beaten, raped, lost her job. His father was beaten to the point where he died. The petitioner himself suffered physical abuse and harassment. Hernandez-Ortiz is kind of a classic look at what happened to the child, where he was seven in his whole village, suffered a massacre. He had family members that were murdered. His parents lost their animals and farms. So even looking at this de novo and kind of looking at the different case law, I agree that it's close, you know, and being that kind of discrimination and harassment repeatedly as a child. No one is saying that, you know, it's okay. But I think just even looking at that close line, it just doesn't fall on the side of the cases where there is just kind of undeniable persecution that happened. There's really been, as a teenager, the gang interactions, you know, which has been found as not necessarily rising the level of persecution. And the other discrimination and harassment just never resulted in physical harm to him or his family. His mom did get hit by one of the rocks, I think, in 2004 when he was in the U.S. as an adult. She got bitten in the leg by the dogs. There's just the lack of the, I'd say the evidence of persecution that would really push it to the edge of that extreme concept that the law requires in these cases. Can I ask, with respect to the issue of withholding, is there an alternative ground for upholding the agency's decision, or does it stand or fall based on this rise to the level of persecution issue? The agency found no past persecution and then no clear, so he didn't have a rebuttable presumption of persecution. And it was his burden to establish a clear probability, and he didn't establish a clear probability that he would be harmed to the level of persecution if he returns to Mexico. Right, but if we found that the standard were de novo and that the agency erred in finding no past persecution, because then the presumption would apply and the agency didn't apply, everything else falls. So is there some other alternative ground, or does everything rest on it? That's what I'm trying to discern. The agency didn't consider other grounds, so the court would need to send it back to the agency. If there was past persecution, then DHS would get the chance to rebut that presumption and establish, you know, he could relocate or there are change conditions. But it would, because the agency didn't give us anything else, that it would need to go back to the agency to determine if it had been rebutted. I see my time is almost up. Does anyone have any particular questions? And we would urge, again, with the clear probability, he has parents and eight siblings and their family members that all continue to practice, work, go to school in Mexico, and there's not reported harm that's rising to the level of persecution, other than, you know, the discrimination and harassment. Thank you very much. Thank you, Counsel. We'll hear rebuttal now from Mr. Chan. Thank you, Your Honors. Perhaps I've just misunderstood this de novo and substantial evidence. Just to clarify what I'm saying is I don't think there's any question for lack of an adverse credibility that there were the sticks, the stones, school abuse, the black eyes, so on and so forth. Now, if the court is sleeping under that, the finding, the conclusion of past persecution, then I would definitely say that that should be held under the de novo standard. So hopefully that clarifies what I hope didn't confuse too much before. With respect to the timeliness issue, it's not a new issue. It may not be most clearly defined, but there's over half a page in the opening brief discussing the authority, talking about the legal disability of minority, and it goes through in detail how he gave up his faith for a while and how he discovered it only recently. So that, I think, takes care of whether or not the time issue has been briefed. The last thing I wanted to say about this is that, again, it comes back to that, you know, the government's position seems to be, well, other people have suffered through this. His family suffered through it, and they're still there. So, therefore, it must not be persecution. But the reality is the facts of this case show that because of this abuse, this man stopped practicing his faith. That is religious persecution. It's successful religious persecution, and it's precisely designed for what this law is to protect against. Not all of us are saints and martyrs willing to go forward and bear the shame of all of our peers, the beatings and all of that. It's those people like Mr. Rodriguez that this law is designed to protect. He's entitled to asylum. I don't know how much more he can get from psychological shaming, physical beatings, threats to your family, and giving up your faith for years. It seems to me this falls centrally in exactly what falls into religious persecution. Granted, there are worse cases, and many of those people are already dead and can't bring their asylum claims. So when the court looks at this case, this is a case where the man has been persecuted and, therefore, has a well-founded fear of being persecuted again. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: TASHIMA, COLLINS, SANCHEZ